[Cite as *Mansfield v. Studer*, 2012-Ohio-4840.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| CITY OF MANSFIELD | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No.  2011-CA-93 |
| BRENDA STUDER | : | 2011-CA-94 |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Criminal Appeal from the Mansfield
                               Municipal Court, Case Nos.
                               2011CRB01403  and 2011CRB01654

JUDGMENT:                      Affirmed in part; reversed in part
                               Remanded

DATE OF JUDGMENT ENTRY:        October 17, 2012

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

MICHAEL KEMERER                     ANDREW KVOCHICK
Assistant Law Director              76 N. Mulberry Street
30 North Diamond Street             Mansfield, OH 44902
Mansfield, OH 44902

*Gwin, J.,*

{¶1} Appellant Brenda Studer ("Studer") appeals from the October 5, 2011 judgment entry of the Mansfield Municipal Court convicting her after a jury trial of two counts of animal cruelty, one count of disorderly conduct and one count of resisting arrest. The trial court sentenced her to a jail term of ninety days on each count, consecutive, but suspended on the condition of three years of supervised probation. The trial court further ordered she not possess any dogs or cats, undergo a mental health evaluation, and pay restitution to the Humane Society for the costs of housing the animals of which she was convicted. Appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} Studer confined a large number of dogs and cats inside of half of a barn she rented and a small shed she had placed on the property at 2306 Bowman Road, Mansfield, Ohio. The Humane Society had previously had dealings with her and knew she was keeping animals at the location. Periodically, over a period of three years, they would check this property to make sure the conditions the animals were housed in were appropriate.

{¶3} On March 3, 2011, Studer went to Melanie Hull, DVM with two puppies, both of which were missing portions of a front leg and ear. The puppies injuries coupled with "some of the things that were said between [Studer] and some of [Dr. Hull's] staff" caused Dr. Hull to feel "it at least needed looked into," so she contacted the Humane Society.

{¶4} On March 11, 2011, agents of the Richland County Humane Society stopped at the Bowman Road property to inspect it. Studer was not present, so humane

society agents questioned the property owner, Barbara Marsh, who gave them permission to look around. While standing on the side of the barn belonging to Marsh, which was not rented to Studer, agents were able to look through an opening in a partition to view the condition of the animals housed by Studer. They then examined another small outbuilding by peering through the window.  Humane society agents observed violations of law concerning the conditions in which the animals were housed. Accordingly, the agents sought and received a search warrant signed by a magistrate of the Mansfield Municipal Court to enter all parts of the structures at 2306 Bowman Road and seize animals and evidence of their mistreatment.

{¶5}   While executing the warrant, humane society agents noticed that the buildings lacked fresh air, there was a large build-up of waste that had literally buried the dogs in their own cages, and there was a lack of wholesome food and water. Ultimately, over fifty dogs and over thirty cats belonging to Studer were seized from 2306 Bowman Street, Mansfield, Ohio between March 31 and April 1, 2011.

{¶6}   On March 31, 2011, while humane society agents and volunteers were executing the warrant, Studer arrived. Her aggressive nature concerned the humane society agents, who contacted the Richland County Sheriff's Office for their safety. Deputy Gunder and Sergeant Zehner of the Richland County Sheriff's Office arrived to monitor the execution of the warrant. In the presence of the Sheriff's deputies, Studer interfered with the humane society agents executing the warrant. After approximately one hour of interference, Sergeant Zehner attempted to arrest Studer for Obstructing Official Business and Disorderly Conduct.

**{¶7}** Studer fought her arrest and was charged with resisting arrest. Additionally, she threatened both humane society agents and veterinarian Melanie Hull. Studer was charged with three counts of Menacing.

**{¶8}** At the end of the day, Studer had also been cited with 10 counts pertaining to a failure to provide food or water in violation of R.C. 939.131(C)(2), one count of abandonment with reference to a four-month old, black, white, and tan female puppy, R.C. 959.13. One count of confining cats with no ventilation in violation of RC. 959.13(A)(4), one count of confining dogs "in shed with no ventilation — exercise" in violation of R.C. 959.13(A)(4), one count of "cruelty... by crate covered with coats" with reference to a four-month old, black, white, and tan female puppy in violation of R.C. 959.13(A)(4).

**{¶9}** At the conclusion of the government's case, the trial court dismissed three counts pertaining to a puppy in a car. The jury found Studer guilty of two counts of animal cruelty, one count of disorderly conduct and one count of resisting arrest.

*ASSIGNMENTS OF ERROR*

**{¶10}** Studer raises 14 assignments of error,

**{¶11}** "I. THE TRIAL COURT ERRED BY CONVICTING AND SENTENCING THE DEFENDANT BASED ON DIAMETRICALLY OPPOSED JURY VERDICTS.

**{¶12}** "II. THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE ADDITIONAL FINDING REQUIRED TO ELEVATE DISORDERLY CONDUCT TO A FOURTH-DEGREE MISDEMEANOR.

**{¶13}** "III. THE VERDICT FORMS DID NOT CONTAIN AN ADDITIONAL FINDING TO ELEVATE DISORDERLY CONDUCT TO A FOURTH DEGREE MISDEMEANOR OR INDICATE THE LEVEL OF THE OFFENSE.

**{¶14}** "IV. THE TRIAL COURT ERRED BY IMPOSING JAIL TIME FOR DISORDERLY CONDUCT, A MINOR MISDEMEANOR.

**{¶15}** "V. TRIAL COURT ERRED IN NOT SUPPRESSING THE EVIDENCE AS FRUIT OF THE POISONOUS TREE.

**{¶16}** "VI. TRIAL COURT FAILED TO ISSUE FINDINGS OF FACT PERTAINING TO THE SUPPRESSION HEARING ON THE RECORD.

**{¶17}** "VII. THE TRIAL COURT FAILED TO ALLOCATE EXPERT FUNDS FOR TRIAL.

**{¶18}** "VIII. THE CONVICTIONS FOR ANIMAL CRUELTY WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶19}** "IX. THE CONVICTIONS FOR ANIMAL CRUELTY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶20}** "X. THE TRIAL COURT COMMITTED PLAIN ERROR BY NOT INSTRUCTING THE JURY ON ALL THE ELEMENTS OF RESISTING ARREST.

**{¶21}** "XI. THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY ON THE EXCESSIVE FORCE DEFENSE TO RESISTING ARREST.

**{¶22}** "XII. DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST AN INSTRUCTION ON THE EXCESSIVE FORCE DEFENSE TO RESISTING ARREST.

**{¶23}** "XIII. THE TRIAL COURT ERRED IN OVERRULING THE DEFENSE'S MOTION TO ACQUIT ON DISORDERLY CONDUCT.

**{¶24}** "XIV. PROVISIONS OF THE SENTENCE IMPOSED BY THE TRIAL COURT WERE UNREASONABLE AND UNLAWFUL."

I.

**{¶25}** In her first assignment of error, Studer alleges the jury returned diametrically opposed jury verdicts, specifically referring to three separate jury verdict forms all containing the designation "Count 14."

**{¶26}** The similar nature of the many charges could confuse the jury if presented as count numbers, so count numbers were not used. Instead, the criminal citations charging the complaints were attached to their respective verdict forms. The trial court notified the jury of this, stating, "As to all the animal cases, you will find attached to the Verdict Form the Complaint charging the offense, that's merely for your convenience to try to keep from being confused because there's so many counts." 3T. at 238.

**{¶27}** Numbers were not used in the jury instructions to identify the offenses. Further, the verdicts that were ultimately returned by the jury were identified by the text of the citations, not count numbers. Id. at 245.

**{¶28}** Consistent with the trial court's instruction, the verdict forms were given to the jury with the citations attached, and those citations are still attached to the verdict forms in the Court's file. A review of the verdict forms reveals that three verdict forms do mention a "Count 14." However, a review of the citation attached to the first of these reveals the jury found Studer guilty of Animal Cruelty, because "31 cats varied colors, hair length, sex" were confined, "w/ no ventilation in shed." In addition, the jury found

Studer guilty of Animal Cruelty, because "30 dogs varied breeds, sex, etc" were confined, "in shed w/ no ventilation - exercise." Finally, the last verdict form cited by Studer reveals the jury found her not guilty of a violation of R.C. 959.131, i.e. Prohibitions to Companion Animals, where she is alleged to have confined a "male fawn/white boxer . . . w/out providing water."

**{¶29}** It is abundantly clear which offenses the jury intended to find Studer guilty of because citations setting forth the violations were attached to each of the offenses involving animals.

**{¶30}** Studer's first assignment of error is overruled.

## II. III., IV.

**{¶31}** Studer's assignments of error two through four address the disorderly conduct conviction that was treated as a fourth-degree misdemeanor. Studer contends it should have been treated as a minor misdemeanor. The state concedes that both the criminal citation advising Studer of the charge and the jury instructions suggested the elements of the minor misdemeanor.

**{¶32}** Accordingly, the state agrees it would be proper for this sentence to be remanded for sentencing in accordance with the lesser offense.

**{¶33}** Studer's second, third and fourth assignments of error are sustained.

## V. & VI.

**{¶34}** In her fifth and sixth assignments of error, Studer challenges the search warrant, alleging the evidence obtained pursuant to the warrant should have been suppressed as the product of an illegal search and that the trial court failed to issue its findings of fact on the record in violation of Ohio Crim. R 12(F). Further, she alleges that

the humane society agents were not properly appointed; therefore, they lacked authority to execute a search warrant.

**{¶35}** Studer first claims that the court's findings of fact were deficient because they did not articulate a basis for denying her motion to suppress on the issue of whether the agents lied to the property owner about having a search warrant during their initial visit to the premises on March 11, 2011.

**{¶36}** Crim.R. 12(F) states that when a court makes a ruling on a motion in which factual issues are involved in determining the motion, the court must "state its essential findings on the record." Despite this language, the rule is not self-executing as to findings of fact. In *State v. Eley*, 77 Ohio St.3d 174, 179, 672 N.E.2d 640(1996), the Ohio Supreme Court held the defendant must request that the court state its essential findings of fact in support of its denial of a motion, or any error to do so by the trial court is waived. Studer did not request findings of fact from the trial court. Accordingly, she has waived this error.

**{¶37}** Even if Studer had preserved the error for appeal, we would not find the court's failure to state any factual findings on the issue to be error. The requirement that the court make findings of fact is to enable a reviewing court to understand the basis for the court's decision. Thus, even if a trial court commits this error, there also must be prejudice in order to reverse. *State v. Sapp*, 105 Ohio St.3d 104, 2002–Ohio–7008, 822 N.E.2d 1239, ¶ 96 (if the record is sufficient to allow full review of the motion, there is no prejudice in the failure to state findings of fact under Crim.R. 12). See also, *State v. Brown*, 64 Ohio St.3d 476, 481–482, 597 N.E.2d 97 (1992) (where defendant did not ask for findings and record supports decision, reversal for failure to make findings is

improper); *State v. Benner*, 40 Ohio St.3d 301, 317–318, 533 N.E.2d 701 (1988). We find no prejudice as this Court is able to fully review the trial court's factual basis for denying Studer's motion to suppress.

**{¶38}** Studer next implies that the agents lacked probable cause to obtain a search warrant because their observations, which form the basis of the affidavit in support of the issuance of a search warrant, were the result of an illegal warrantless search.

**{¶39}** In addressing the substance of Studer's assignment of error, we begin with Crim.R. 41, which governs the issuance and execution of search warrants in Ohio. Subsection (C) of the rule reads, in pertinent part:

> A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.

**{¶40}** In reviewing the affidavit in this case, we are guided by the following instruction by the Ohio Supreme Court:

The *Gates* decision [*Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527] provides considerable elaboration as to the "fair probability" standard applicable to the magistrate's probable cause determination. We find the following passage particularly instructive:

"'[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion' [quoting from *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364]. More recently, we said that 'the quanta * * * of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar*, 338 U.S., at 173, 69 S.Ct. at 1309. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. * * * [I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' *Spinelli*, 393 U.S., at 419[, 89 S.Ct. at 590–591]. See Model Code of Pre–Arraignment Procedure § 210.1(7) (Prop. Off. Draft 1972); 1 W. LaFave, Search and Seizure § 3.2(e) (1978)." (Emphasis added.) *Illinois v. Gates,* supra, at 235, 103 S.Ct. at 2330.

It is also important to note that the totality-of-the-circumstances analysis of *Gates* not only addresses the original probable cause

determination of the magistrate but carefully limits the role of a reviewing court as well to that of simply " * * * ensur[ing] that the magistrate had a 'substantial* * * basis for * * * concluding' that probable cause existed. * * *'" Id. at 238–239, 103 S.Ct. at 2332. In this regard, we find the following language especially pertinent to the case before us:

* * *

[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli*, supra, at 419[, 89 S.Ct. at 591]. * * *'" *Gates*, supra, at 236, 103 S.Ct. at 2331.

We also have said that '[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants,' *United States v. Ventresca*, 380 U.S. 102, 109[, 85 S.Ct. 741, 746, 13 L.Ed.2d 684] 1965). * * *'" *Gates*, supra, at 237, fn. 10, 103 S.Ct. at 2331, fn. 10. See, also, *Massachusetts v. Upton*, supra, at 733, 104 S.Ct. at 2088.

*State v. George* 45 Ohio St.3d 325, 329-330 544 N.E.2d 640(1989).

**{¶41}** Deference to the judge issuing a warrant, however, is not boundless. *State v. Birk*, 5th Dist. No. 2007-CA-63, 2008-Ohio-5571, ¶27. Notwithstanding the reasonable reliance on a search warrant exception to Fourth Amendment exclusionary

rule, suppression is an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416(1984). Good faith is no defense where the officer himself is the source of the challenged information. See, *United States v. Baxter*, 889 F.2d 731(6th Cir.1990).

**{¶42}** "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard to the truth'." *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819(1992) *superseded by Constitutional amendment on other grounds as recognized by State v. Smith*, 80 Ohio St.3d 89, 103, 684 N.E.2d 668(1997).(Citing *Frank v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672(1978)). See also, *State v. McKnight*, 107 Ohio St.3d 101, 105, 2005-Ohio-6046, 837 N.E.2d 315, 329, ¶31. "'Reckless disregard' means that the affiant had serious doubts of an allegation's truth." Id. (Citation omitted). "Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate'." *State v. Waddy*, supra. (Emphasis deleted in original) (Citation omitted). *State v. Brown*, 5th Dist. No. No.1999AP09005, 2000 WL 988521(June 28, 2000).

**{¶43}** "The burden of showing something by a preponderance of the evidence ... simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." *Concrete Pipe & Products of Cal., Inc. v.*

*Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 622, 113 S.Ct. 2264, 2279, (1993) (internal quotation marks omitted). In other words, the preponderance standard goes to how convincing the evidence in favor of a fact must be in comparison with the evidence against it before that fact may be found, but does not determine what facts must be proven as a substantive part of a claim or defense. *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 117 S.Ct. 195, 138 L.Ed.2d 138, at n. 3(1997).

**{¶44}** In assessing whether a party has met its burden of proof, the Ohio Supreme Court has stated, "[t]he degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118, 123(1954). *See also, Rice v. City of Cleveland*, 144 Ohio St. 299, 58 N.E. 768(1944).

**{¶45}** On May 19, 2011, the trial court issued a judgment entry finding,

no reason to question the veracity of the affirmations made in the aforementioned warrant, that such affirmations were more than sufficient to provide the magistrate who signed the warrant a substantial basis for a determination of probable cause, and that there is no basis to conclude the knowledge obtained for such affiliations was acquired in an illegal or illicit manner.

**{¶46}** Contrary to Studer's assertions that "it is not clear whether the trial court found that the agents did or did not lie to Ms. Marsh (the property owner)," it is abundantly clear the trial court found that the agents did not lie or coerce Ms. Marsh into granting consent to enter the premises. Ms. Marsh testified,

Q. And later you testified, right, the Humane Society had permission to look around onto [sic.] your property whether or not they had a warrant, they had permission to look?

A. Yes

T. May 5, 2011 at 87. Ms. Houghton also testified Marsh had given the agents permission to search and that she did not tell Marsh that the agents had a warrant on March 11, 2011. Id at 40-41; 55. Agent Tamara Rex confirmed that Marsh freely gave permission. (Id. at 93).

**{¶47}** Consent to enter a residence can be given by anyone who possesses common authority over the premises, and in particular, by the resident of a home. *See United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242(1974); *State v. Greer,* 39 Ohio St.3d 236, 530 N.E.2d 382(1988).

**{¶48}** In the case at bar, the officers lawfully viewed the interior of Studer's barn, and their observations were properly considered by the magistrate in issuing a search warrant for Studer's premises. *United States v. Dunn,* 480 U.S. 294, 305, 107 S.Ct. 1134, 94 L.Ed.2d 326(1987). In *Dunn*, the Supreme Court held that the Constitution did not forbid police officers who were standing in open field upon which a barn was constructed from looking into the barn, even if defendant did have reasonable expectation of privacy in barn. In this case, agents who were lawfully standing on one

side of the barn could look through an opening in a partition to view the premises on the other side.

**{¶49}** The United States Supreme Court in *Matlock, supra* determined that "* * * when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. at 171, 94 S.Ct. 988, 39 L.Ed.2d 242(1974).

**{¶50}** In the case at bar, there is no evidence that Studer had exclusive dominion or control over the area, or had right to exclude individuals from that side of the barn from which the agents made their observations.

**{¶51}** Based upon the totality of the circumstances we find that the magistrate had a substantial basis for concluding that probable cause existed and that there is no evidence the affiant made a false statement, either intentionally, or with reckless disregard to the truth in order to obtain the warrant.

**{¶52}** Finally, the only evidence in the record establishes that the judge of the probate court in accordance with R.C. 1717.06 properly appointed the humane society agents. R.C. 1717.06 states in part,

> All appointments of agents under this section shall be approved by the mayor of the municipal corporation for which they are made. If the society exists outside a municipal corporation, such appointments shall be

approved by the probate judge of the county for which they are made. The mayor or probate judge shall keep a record of such appointments.

**{¶53}** In the case at bar, the agents presented their badges to the court. (T. May 25, 2011 at 21). No evidence was presented that the probate court was not authorized to appoint the agents.

**{¶54}** Studer's fifth and sixth assignments of error are overruled in their entirety.

VII.

**{¶55}** In her seventh assignment of error, Studer alleges the trial court failed to allocate funds for an expert; however, trial counsel withdrew the request for funds for an expert.

**{¶56}** This assignment of error is consistent with the transcript as originally submitted, which omits the last sixteen seconds of the July 6, 2011 record where Studer's counsel withdrew the request for funds for an expert. However, pursuant to App.R.9 the parties have filed a "Joint Stipulation" which corrects the record to include the following exchange that took place following the transcribed record on July 6, 2011:

> ***Judge Ault***          *Defense is withdrawing its motion for an expert?*
>
> ***[Defense counsel]***   *That's, that's correct judge*
>
> ***Judge Ault***          *That's it*
>
> ***[Defense counsel]***   *Thank you*

**{¶57}** Further, the joint stipulation, in light of this new information, indicated that Studer would argue counsel's decision to withdraw the request for funds for an expert was ineffective assistance of counsel.

**{¶58}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838(1993); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶59}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶60}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts

or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶61}** In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶62}** Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U. S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

**{¶63}** Studer contends that counsel was ineffective because he withdrew Studer's request for funds to hire a veterinary expert witness.

**{¶64}** A decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with his client." *State v. Murphy,* 91 Ohio St.3d 516, 524, 2001-Ohio-0112. This court can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff." *State v. Woullard,* 158 Ohio App.3d 31, 813 N.E.2d 964, 2004-Ohio-3395, ¶ 39(2nd Dist.), quoting *State v. Yarber*, 102 Ohio App.3d 185, 188, 656 N.E.2d 1322(12th Dist. 1995). Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523(1988). When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley,* 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 21.

**{¶65}** "Debatable trial tactics do not establish ineffective assistance of counsel." *State v. Hoffner*, 102 Ohio St.3d 358, 365, 2004-Ohio-3430(2004), ¶ 45. Trial counsel's failure to request an expert is a "debatable trial tactic," and does not amount to ineffective assistance of counsel. See *State v. Thompson* (1987), 33 Ohio St.3d 1, 9, 514 N.E.2d 407 (trial counsel's failure to obtain a forensic pathologist to "rebut" issue of rape was not ineffective assistance of counsel); *State v. Foust,* 105 Ohio St.3d 137, 153-154, 2004-Ohio-7006, 823 N.E.2d 836, ¶¶ 97- 99 (trial counsel's failure to request funds for a DNA expert, an alcohol and substance-abuse expert, a fingerprint expert, and an arson expert did not amount to ineffective assistance of counsel because appellant's need for experts was "highly speculative" and counsel's choice "to rely on cross-examination" of prosecution's expert was a "legitimate tactical decision"); *State v. Yarger*, 6th Dist. No. H-97-014, 1998 WL 230648 (May 1, 1998) (trial counsel's failure to hire an expert medical doctor to rebut state's expert witness was not ineffective assistance of trial counsel); *State v. Rutter,* 4th Dist. No. 02CA17, 2003-Ohio-373, ¶ 19, 28 (trial counsel's failure to hire an accident reconstructionist did not amount to ineffective assistance of counsel).

**{¶66}** In the case at bar, the jury heard both sides of the argument during trial; they found Studer not guilty of 13 counts. There is nothing in the record to show the jury would have found Studer not guilty of the remaining counts had an expert witness testified. *State v. Benge,* 75 Ohio St.3d 136, 141, 1996-Ohio-227.

**{¶67}** Studer's seventh assignment of error is overruled.

VIII. & IX.

{¶68} In her eighth and ninth assignments of error, Studer alleges insufficient evidence to support convictions of animal cruelty, and that such convictions were against the manifest weight of the evidence.

{¶69} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S.120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶70} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but

depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶71} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶72} Studer's convictions of animal cruelty arose under R.C. 959.13(A)(4) which reads, "No person shall . . . Keep animals other than cattle, poultry or fowl, swine, sheep, or goats in an enclosure without wholesome exercise and change of air ..." One of Studer's convictions was for dogs in the shed, and the other was for cats in the shed.

{¶73} The record contains reliable evidence that the animals were deprived of sufficient exercise. The door to the shed was rarely opened, because humane society agents actually had to cut wires to gain access to the inside of the shed. If the door could not be opened, then fresh air could not get in, and dogs could not get out for exercise. After access was gained to the interior of the shed, many of the dogs were quite literally buried in their own excrement indicating it had been a great deal of time since the dogs had been freed from their cages. The jury was given photographs of the conditions.

{¶74} In addition, the cages in question were small. As the jury heard through testimony and saw in the photographs, the dogs did not have room to move around in their cages.

{¶75} The shed also lacked adequate ventilation. When the door was first opened, steam, presumably from the animals own decomposing waste, shot out of the shed, which was depicted in photographs presented to the jury. Humane society agents also testified the shed did not have any ventilation to the outside.

{¶76} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Studer was guilty of animal cruelty. We hold, therefore, that the state met its burden of

production regarding each element of the crimes of animal cruelty and, accordingly, there was sufficient evidence to support Studer's convictions for animal cruelty.

{¶77} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964(2nd Dist.), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶78} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714

(May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶79}** In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier

of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶80}** Although Studer cross-examined the witnesses and presented testimony that she did exercise the animals and provide fresh air, food and water, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

**{¶81}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717(1st Dist.1983). The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in convicting Studer of the charges.

**{¶82}** Studer's eighth and ninth assignments of error are overruled in their entirety.

X.

**{¶83}** In her tenth assignment of error, Studer alleges the trial court did not provide the jury adequate instructions on the elements of resisting arrest. Specifically,

Studer submits the trial court did not instruct the jury to decide if the arrest was lawful and did not provide the standard for warrantless arrest.

**{¶84}** The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462(3rd Dist. 1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140(1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

**{¶85}** Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the

grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

**{¶86}** Studer did not file a written request for specific jury instructions, and did not object to the trial court's jury instructions. Based upon Studer's failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.

**{¶87}** Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

**{¶88}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 308(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. *Perry, supra*, at 118, 802 N.E.2d at 646.

**{¶89}** With regard to the resisting arrest charge, the elements are set forth in R.C. 2921.33, which provides in pertinent part, "(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

**{¶90}** As set forth above, pursuant to R.C. 2921.33(A), "[a] lawful arrest is an essential element of the crime of resisting arrest." *State v. Vactor,* Ninth Dist. No. 02CA008068, 2003-Ohio-7195, ¶ 34, citing *State v. Thompson*, 116 Ohio App.3d 740, 743, 689 N.E.2d 86(1st Dist.1996). In order to prove a lawful arrest, the state need not prove that the defendant was, in fact, guilty of the offense. *Id.,* citing *State v. Sansalone*, 71 Ohio App.3d 284, 285, 593 N.E.2d 390(1st Dist. 1991). Instead, the state must prove both "that there was a reasonable basis to believe that an offense was committed, [and] that the offense was one for which the defendant could be lawfully arrested." *Id.,* citing *Thompson,* supra, at 743-44, 689 N.E.2d 86. *See,* also, *City of Xenia v. Smith*, 2nd Dist. No. 94-CA-110, 1995 WL 386873(June 30, 1995).

**{¶91}** Cruelty to animals is an offense for which Studer could be lawfully arrested. Moreover, as we discussed above, there was a reasonable basis for the officers to believe that the offense had been committed. Further, the officer had a reasonable basis to believe that an offense was committed, that the offense was one for which the defendant could be lawfully arrested. Although not properly cited or presented to the jury, Studer's action clearly manifested a reasonable belief that she was committing the crime of disorderly conduct with persistence a fourth degree misdemeanor in violation of R.C. 2915.11(E)(3).

**{¶92}** In the case at bar, Deputy Zehner testified the Studer was, "ranting and raving, yelling towards the direction of the Humane Society" agents. Deputy Zehner

testified that this behavior continued for about an hour. Studer was, "yelling at them, threatening them . . . humane society, pretty much directed at all of them." Eventually, Deputy Zehner warned Studer multiple times that if her actions continued, he would arrest her because she was physically getting in the way of the humane society agents doing their job, but she did not comply with his requests. In addition, testimony of threats of physical harm directed at humane society officers was presented. Agent Tamara Rex testified, "She [Studer] told us that she would kill us," and these threats of harm were taken seriously. Agent Rex further testified that Studer physically interfered with the removal of the animals.

{¶93} Under these circumstances, there is nothing in the record to show that the trial court abused its discretion or otherwise committed plain error in defining the elements of the crime of resisting arrest to the jury.

{¶94} Studer's tenth assignment of error is overruled.

XI. & XII.

{¶95} In her eleventh and twelfth assignments of error, Studer alleges the trial court erred by not instructing on the excessive force defense to resisting arrest and that her trial counsel was ineffective for failing to request such an instruction.

{¶96} Studer did not file a written request for specific jury instructions, and did not object to the trial court's jury instructions. Based upon appellant's failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.

{¶97} Excessive force is not an element of resisting arrest. *State v. Ellis,* 2nd Dist. No. 24003, 2011-Ohio-2967, ¶25. Rather, excessive force is an affirmative

defense to resisting arrest, see 2 Ohio Jury Instructions (2009), Section 521.33(11), citing as authority *State v. Logsdon*, 3rd Dist. No. 13–89–10, 1990 WL 197883(Dec. 4, 1990). *Logsdon* holds that "a claim of unnecessary or excessive force must be regarded as an affirmative defense to a charge of resisting arrest." It points out that the defense fits the second statutory-definition of an affirmative defense, "The defense is peculiarly within the knowledge of the defendant because only the defendant can adequately demonstrate to the trier of fact the point at which he felt he had to protect himself from the actions of the arresting officer." *Id.* "With an allegation of unnecessary or excessive force in a resisting arrest charge," says *Logsdon,* "a defendant attempts to excuse or justify his actions in the classic nature of an affirmative defense, i.e. 'confession and avoidance.' "Id*.* "Thus," *Logsdon* continues, "the defendant effectively admits his resistance, if only to show that it was necessary in order to protect himself from the officer's excessive force." *Id. Accord, Ellis,* 2011-Ohio-2967, ¶26.

**{¶98}** In addition, the Fourth District Court of Appeals has held that "[a] trial court properly refused to instruct the jury that the state must prove, as a part of the element of lawful arrest, the arresting officer did not use excessive or unnecessary force in arresting appellant." *State v. Thompson* (Nov. 9, 1993), 4th Dist. No. 92CA1906, 1993 WL 472907. "The use of excessive force may give rise to civil remedies or criminal defenses," the Fourth District has said, "but it does not negate the legal nature of an accused's detention for Fourth Amendment or concurrent statutory purposes." *Id. Accord, Ellis,* 2011-Ohio-2967, ¶25.

**{¶99}** Likewise, the Twelfth District has held that "the absence of excessive or unnecessary force is not a material element of the crime of resisting arrest as defined in

R.C. 2921.33." *Blanchester v. Newland*, 12th Dist. No. CA83–07–008, 1984 WL 3426(Sept. 17, 1984). Rather, "[t]he use of unnecessary or excessive force by the arresting officer is a defense to the charge of resisting arrest." *Id.; Accord, Ellis,* 2011-Ohio-2967, ¶25.

**{¶100}** We conclude that the trial court's instruction was proper because excessive force is not an element of the crime of resisting arrest.

**{¶101}** Studer's trial counsel was not ineffective in failing to request an instruction on the affirmative defense of excessive force. In this case, the jury heard both sides on the issue of whether excessive force was used during Studer's arrest. Deputy Gunder and Sergeant Zehner testified that the methods used during Studer's arrest were in accordance with law enforcement training and were necessitated by Studer's resistance. Studer chose to rely upon the argument that her arrest was unlawful therefore she was entitled to resist.

**{¶102}** A defendant may decide, as a matter of trial strategy, not to request such an instruction because of concerns that it will only emphasize in the juror's minds the evidence of other criminal acts committed by defendant to which the instruction applies, thereby reinforcing the prejudice. *State v. Tisdale,* 2nd Dist. No. 19346, 2003-Ohio-4208, ¶48. We need not decide in this case whether defense counsel's failure to request an instruction was a legitimate trial strategy, or constitutionally deficient performance. Assuming arguendo that counsel's failure to request an instruction on the affirmative defense of excessive force constitutes deficient performance, in view of the substantial evidence of Studer's guilt there has been no showing of prejudice, as defined by *Strickland,* resulting from counsel's deficient performance.

**{¶103}** Studer's eleventh and twelfth assignments of error are overruled.

XIII.

**{¶104}** In her thirteenth assignment of error, Studer argues that the trial court erred in not granting her Criminal Rule 29 motion to acquit on the disorderly conduct charge because the evidence was not sufficient to sustain a verdict.

**{¶105}** In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991).

**{¶106}** R.C. 2917.11, Disorderly Conduct provides in relevant part,

(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;

(3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;

(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;

(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

{¶107} Recklessness is defined in R.C. 2901.22(C), which states:

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶108} The record contained numerous references not only to threats made verbally by Studer, but also her aggressive actions. Tamera Rex testified, "She told us that she would kill us," and that she took threats of physical harm from the appellant seriously. She later testified after the initial threats, Studer physically got in the way of people working on the Humane Society's behalf. Many of the people subjected to Studer's actions were untrained volunteers.

{¶109} Threatening speech or conduct is not protected under the First Amendment. *Cf. Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664(1969). From the evidence, we conclude that it is possible that a trier of fact could find Studer guilty of threatening Ms. Black to the extent that she recklessly caused Ms. Black, annoyance, or alarm. As a result, we hold that a trier of fact could conclude that there was sufficient evidence to support disorderly conduct conviction. Cf. *Shaker Hts. v. Mosley*, 113 Ohio St.3d 329, 865 N.E.2d 859, 2007-Ohio-2072.

**{¶110}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Studer was guilty of disorderly conduct. We hold, therefore, that the state met its burden of production regarding each element of the crimes of disorderly conduct and, accordingly, there was sufficient evidence to support Studer's conviction for disorderly conduct.

**{¶111}** Studer's thirteenth assignment of error is overruled.

XIV

**{¶112}** In her fourteenth assignment of error, Studer alleges the conditions of the sentence that she not own dogs or cats and not have contact with certain people who had connections to the charges would be impermissible. Specifically, the trial court ordered that Studer have no contact with Dr. Hull or her employees. Studer was further ordered to have no contact with any employee, volunteer, or Board Member of the Humane Society. The trial court further ordered that Studer "not own or ever or in any way have possession of cats or dogs and that's anywhere, not just in Richland County."

**{¶113}** Community control sanctions must be reasonably related to the statutory ends of community control and must not be overbroad. *State v. Talty*, 103 Ohio St.3d 177, 2008-Ohio-4888, 814 N.E.2d 1201. In *Talty,* the Ohio Supreme Court set forth a test for determining whether a condition reasonably relates to the three probationary goals:

> R.C. 2929.15(A)(1) governs the authority of the trial court to impose conditions of community control. That section provides that when sentencing an offender for a felony, the trial court may impose one or

more community sanctions, including residential, nonresidential, and financial sanctions, and any other conditions that it considers "appropriate." The General Assembly has thus granted broad discretion to trial courts in imposing community-control sanctions. We review the trial court's imposition of community-control sanctions under an abuse-of-discretion standard. *Lakewood v. Hartman* (1999), 86 Ohio St.3d 275, 714 N.E.2d 902 (reviewing a probation condition under an abuse-of-discretion standard).

Nevertheless, a trial court's discretion in imposing probationary conditions is not limitless. *Jones,* 49 Ohio St.3d at 52, 550 N.E.2d 469. In *Jones,* we set forth the standard by which courts determine whether a trial court exceeds those limits. * * *

"Having so limited our analysis in *Jones,* we set forth the test for determining whether a condition reasonably relates to the three probationary goals-as reflected in former R.C. 2951.02(C)-of "doing justice, rehabilitating the offender, and insuring good behavior." 140 Ohio Laws, Part I, at 604. We stated that courts must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Jones,* 49 Ohio St.3d at 53, 550 N.E.2d 469.

103 Ohio St.3d 177, 2008-Ohio-4888, 814 N.E.2d 1201, ¶¶ 11-12.

{¶114} The probationary conditions in this case have an obvious relationship to the crimes for which Studer was convicted. The conditions also reasonably relate to rehabilitating Studer, since she will presumably be able to own animals again once she has completed her probation. The conditions relate to future criminality and serve the statutory ends of probation since they will ensure that Studer has little opportunity to commit cruelty to animals during the term of her probation. See *State v. Sheets*, 112 Ohio App.3d 1, 8-9, 677 N.E. 2d 818(4th Dist. 1996) (holding that forfeiture of animals and prohibition against owning animals for three years were valid conditions of probation in a conviction for cruelty to animals); *State v. Kilburn*, 12th Dist. No. CA96-12-1320, 1998 WL 142412(Mar. 30, 1998) (holding that forfeiture of dogs, sheep, goats and horse was appropriate condition of probation for conviction of animal cruelty); *State v. Vasquez*, 6th Dist. No. F-97-026, 1998 WL 334220 (June 5, 1998) (the offenders were found guilty of violating R.C. 959.13(A) and were ordered to forfeit all of the animals under their control even though they were only convicted of being cruel to some of those animals); *State v. Chamberlain*, 12th Dist. No. CA99-01-003, 2000 WL 127087(Jan. 31, 2000) at *10.

{¶115} Therefore, the trial court did not abuse its discretion in setting the conditions of Studer's probation. Accordingly, Studer's fourteenth assignment of error is overruled.

*CONCLUSION*

{¶116} The state agrees it would be proper for Studer's sentence for disorderly conduct be remanded for sentencing in accordance with the lesser offense. Therefore, Studer's second, third and fourth assignments of error are sustained.

**{¶117}** Studer's first, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error are overruled in their entirety.

**{¶118}** Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, give an appellate court the power to affirm, reverse, or modify the judgment of an inferior court. Accordingly, Studer's sentence on the charge of disorderly conduct is vacated, and this case is remanded for proceedings in accordance with our opinion and the law.

**{¶119}** The judgment of the Mansfield Municipal Court, Richland County, Ohio is affirmed in part and reversed in part and this case is remanded for proceedings in accordance with our opinion and the law.


By Gwin, J.,

Delaney, P.J.,

Hoffman, J., concur

                                                _____

                                                HON. W. SCOTT GWIN

                                                _____

                                                HON. PATRICIA A. DELANEY

                                                _____

                                                HON. WILLIAM B. HOFFMAN


WSG:clw 0927

[Cite as *Mansfield v. Studer*, 2012-Ohio-4840.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CITY OF MANSFIELD | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BRENDA STUDER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO.  2011-CA-93 |
| | | 2011-CA-94 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mansfield Municipal Court, Richland County, Ohio is affirmed in part and reversed in part and this case is remanded for proceedings in accordance with our opinion and the law.  Costs divided equally between the parties.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN