[Cite as *State v. Gilmore*, 2024-Ohio-2095.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ERIC S. GILMORE, | : | Case No. 2023 CA 00031 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

**NUNC PRO TUNC**

CHARACTER OF PROCEEDING: Appeal from the Fairfield County Municipal Court, Case No. 22 CRB 1219

JUDGMENT: Affirmed

DATE OF JUDGMENT: May 30, 2024

APPEARANCES:

For Plaintiff-Appellee

DAVID R. KLEMP
City of Lancaster Law Director
& Prosecutor's Office
Assistant Prosecutor
136 West Main Street
P.O. Box 1008
Lancaster, Ohio 43130

For Defendant-Appellant

ERIC S. GILMORE, Pro Se
1030 Chenonceaux Dr.
Marion, Ohio 43302

*Baldwin, J.*

**{¶1}** The appellant appeals his conviction and sentence on charges of telecommunications harassment and nonconsensual dissemination of private sexual images of another. Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On August 17, 2022, the Fairfield County Sheriff's Department received a report of threats and harassment involving unwanted pornographic images that had been emailed to the caller. Deputy Daniel Kaltenegger responded to the scene and spoke with the caller, R.S.

**{¶3}** On August 16, 2022, R.S. had received two separate emails from the appellant, each containing a photograph of R.S.'s sister-in-law, J.M., nude and engaged in sexual activity. The emails read "[w]hat do you think?", and "[c]an your wife do what her sister can?" R.S. further stated that the emails came from the address "gilmoredash@outlook.com," which he believed to belong to the appellant.

**{¶4}** Deputy Kaltenegger thereafter spoke with J.M., who stated that she had been in a relationship with appellant, but that they had broken up. J.M. further stated that the photographs in question were taken with her consent while she and the appellant were in a relationship; however, she stated that at no time did she given the appellant consent to distribute the photos to anyone else. Finally, J.M. stated that she believed the appellant sent the emails to R.S. because he was angry with her for refusing to reconcile with him, and he was trying to hurt her.

**{¶5}** Deputy Kaltenegger then spoke with the appellant regarding the images, and the conversation was recorded. During said conversation, Deputy Kaltenegger asked

the appellant about the emails. The appellant admitted that the email address in question was his, and admitted to composing the emails, but said that "those emails shouldn't have gone through," stating that he had "cancelled" them.

{¶6} On August 26, 2022, the appellant was charged with one count of Telecommunications Harassment in violation of R.C. 2917.21, a misdemeanor of the first degree; and, one count of Nonconsensual Dissemination of Private Sexual Images of Another in violation of R.C. 2917.211, a misdemeanor of the third degree. The appellant entered a "not guilty" plea to both counts on September 27, 2022, and waived his right to a speedy trial. The trial court appointed counsel for the appellant.

{¶7} A bench trial took place on July 14, 2023, at which the court heard testimony from R.S., J.M., Deputy Kaltenegger, and the appellant. The appellant was found guilty on both counts. He was sentenced to 170 days in jail with 140 days suspended on the telecommunications offense, and 50 days in jail with 20 suspended on the dissemination offense, for a total of 60 days in jail; two years' probation; and, a fine of $25.00 on each count, for a total fine of $50.00. With regard to the appellant's jail sentence, the trial court took into consideration that the appellant had a full-time job, a new wife, and sole custody of a special needs child, and therefore held that the appellant could break the 60-day jail sentence into sets of 10 days, 30 days of which needed to be served by November 1, 2023, and the remaining 30 days of which needed to be served by March 1, 2024. In addition, the trial court allowed the appellant to pay the fines over time.

{¶8} The appellant filed an appeal pro se, and sets forth the following assignments of error:

**{¶9}** "I. INEFFECTIVE ASSISTANCE OF COUNSEL (REFERENCED IN BRIEF, SECTION I): THE DEFENSE COUNSEL, MR. JEFF BLOSSER, PROVIDED INEFFECTIVE ASSISTANCE IN VIOLATION OF THE SIXTH AMENDMENT AS ARTICULATED IN STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984). THE COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS, AND THIS DEFICIENT PERFORMANCE PREJUDICED THE DEFENSE. SPECIFIC INSTANCES ARE DETAILED IN THE TRIAL TRANSCRIPTS (PAGE 15, LINES 3-11; PAGE 21, LINES 11-17; PAGE 23, LINE 9; PAGE 33-34; PAGE 36, LINES 8-12; PAGE 38, LINES 11-18; PAGE 39, LINES 1-7)."

**{¶10}** "II. INSUFFICIENT EVIDENCE TO PROVE GUILT BEYOND A REASONABLE DOUBT (REFERENCED IN BRIEF, SECTION II): THE PROSECUTION FAILED TO MEET ITS BURDEN OF PROVING GUILT BEYOND A REASONABLE DOUBT, AS REQUIRED BY THE STANDARD SET FORTH IN STATE V. JENKS (1991), 61 OHIO ST.3D 259. THE EVIDENCE PRESENTED WAS INSUFFICIENT, LEAVING SIGNIFICANT GAPS AND CONTRADICTIONS THAT UNDERMINE THE PROSECUTION'S CASE. KEY POINTS ARE HIGHLIGHTED IN THE TRIAL TRANSCRIPTS (PAGE 13, LINES 15-17; PAGE 24, LINES 9-16; PAGE 28-32; PAGE 32, LINES 18,19; PAGE 33, LINES 1-4)."

**{¶11}** "III. SENTENCING ERRORS (REFERENCED IN BRIEF, SECTION III): THE SENTENCE IMPOSED BY THE TRIAL COURT IS DISPROPORTIONATE, CONSTITUTING CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION AND FAILING TO ALIGN WITH OHIO STATE STATUTES O.R.C 2929.21 AND 2929.22 ON MISDEMEANOR

SENTENCING. THE SENTENCING REMARKS AND IMPLICATIONS ARE FOUND IN THE TRIAL TRANSCRIPTS (PAGE 56, LINES 9-20; PAGE 59, LINES 20-23 PAGE 60, LINES 1-5)."

{¶12} "IV. JUDICIAL BIAS VIOLATING DUE PROCESS AND FAIR TRIAL RIGHTS (REFERENCED IN BRIEF, SECTION IV): THE TRIAL PROCEEDINGS WERE MARRED BY CLEAR INDICATIONS OF JUDICIAL BIAS, PARTICULARLY FAVORING ONE OF THE VICTIMS, MR. SUMMERS. THIS BIAS UNDERMINED THE FAIRNESS AND IMPARTIALITY OF THE TRIAL, CONSTITUTING A VIOLATION OF THE APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS. INSTANCES OF BIAS ARE EVIDENT IN THE TRIAL TRANSCRIPTS (PAGE 10, LINES 4-17; PAGE 11, LINES 1-4; PAGE 38, LINES 11-18; PAGE 39, LINES 1-7; PAGE 57, LINES 6-7; PAGE 59, LINES 2-4; PAGE 57, LINES 3-5; LINES 8-9)."

## ASSIGNMENT OF ERROR NUMBER ONE

{¶13} The appellant argues in his first assignment of error that his trial counsel was ineffective. We disagree.

## Standard Of Review

{¶14} The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was discussed by this court in *Mansfield v. Studer,* 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840:

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an

objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838 (1993); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

*Studer, supra,* at ¶¶ 58-61. Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must establish two prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and second, that the appellant was prejudiced by such the alleged ineffectiveness.

**Analysis**

{¶15} The appellant was accused of sending R.S. two emails, each with a suggestive message together with an attached photograph depicting his sister-in-law J.M. nude and engaged in a sexual act. R.S. called law enforcement upon receipt of the emails and filed a report.

{¶16} The investigating officer spoke with R.S. He also spoke with J.M., who stated that while she consented to the taking of the photographs in the private context of her relationship with the appellant, she did not consent to them being disseminated to any other individuals. When questioned by law enforcement, the appellant acknowledged that the email address in question was his, and acknowledged that he created the email message in question. He asserted, however, that he did not send the email, but rather, "cancelled" it.

{¶17} The appellant submits that his trial counsel was ineffective based upon the following: he failed to communicate with the appellant sufficiently in preparation for the development of the case and trial; he engaged in insufficient defense strategy which was not tailored to the complexities of the case; he neglected to challenge the appellee's narrative effectively; and, he was unprofessional during trial, "as illustrated by the fact that he asked the appellant for questions to ask during trial."

**{¶18}** The evidence does not support the proposition that the appellant's trial counsel failed to communicate with him sufficiently to prepare for trial. The appellant's trial counsel personally met with him, and engaged in two telephone calls with him. In addition, the appellant's trial counsel appeared with him at pretrials and/or status conferences, and therefore had an opportunity to converse with him regarding the case before, during, and after those proceedings.

**{¶19}** The appellant further argues that his trial counsel failed to engage in sufficient lines of questioning, failed to object, and failed to raise alleged forensic issues. However, these are strategic assessments, and cannot provide the bases for reversal, particularly without a showing of prejudice. As set forth in *Strickland, supra,* "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693.

**{¶20}** In addition, the appellant's trial counsel argued, during both cross-examination of the appellee's witnesses and direct examination of the appellant, that there was a distinction between creating a message and sending a message. The trier of fact, in this case the trial court, simply did not find the appellant's argument in this regard to be credible. This does not render the appellant's counsel ineffective; rather, it means the trial court found that the appellant lacked veracity.

**{¶21}** Finally, the appellant argues that his trial counsel ineffectively argued for acquittal. It is axiomatic that when reviewing a Crim.R. 29 motion the evidence is viewed in the light most favorable to the State. In this case, the appellant admitted that he was in possession of the obscene photographs of the victim, admitted that the email address in question was his email address, and admitted that he composed the email messages. He

testified that he "cancelled" the emails, and therefore was not guilty of the offenses. The trier of fact simply did not believe him. This does not rise to the level of ineffective assistance of counsel.

{¶22} The appellant cannot overcome the first prong of the *Strickland* test, let alone show prejudice as required by the second. As such, his first assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶23} The appellant argues in his second assignment of error that the decision of the trial court was not supported by sufficient evidence. We disagree.

### Standard Of Review

{¶24} Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 164 Ohio St.3d. 589, 2021-Ohio-2207, 174 N.E.3d 754:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks

whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57.

**{¶25}** Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**Analysis**

**{¶26}** R.C. 2917.21 addresses Telecommunications Harassment, and provides in pertinent part:

(A)     No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:

(1)     Makes the telecommunication with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient;

(2)     Describes, suggests, requests, or proposes that the caller, the recipient of the telecommunication, or any other person engage in sexual activity, and the recipient or another person at the premises to which the telecommunication is made has requested, in a previous

telecommunication or in the immediate telecommunication, that the caller not make a telecommunication to the recipient or to the premises to which the telecommunication is made;

* * *

(6) Knowingly makes any comment, request, suggestion, or proposal to the recipient of the telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the intent to abuse, threaten, or harass the recipient;

* * *

(B)(1) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.

(2) No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

(C)(1) Whoever violates this section is guilty of telecommunications harassment.

(2) A violation of division (A)(1), (2), (3), (5), (6), (7), (8), (9), (10), or (11) or (B) of this section is a misdemeanor of the first degree on a first offense and a felony of the fifth degree on each subsequent offense.

(3) Except as otherwise provided in division (C)(3) of this section, a violation of division (A)(4) of this section is a misdemeanor of the first degree

on a first offense and a felony of the fifth degree on each subsequent offense. If a violation of division (A)(4) of this section results in economic harm of one thousand dollars or more but less than seven thousand five hundred dollars, telecommunications harassment is a felony of the fifth degree. If a violation of division (A)(4) of this section results in economic harm of seven thousand five hundred dollars or more but less than one hundred fifty thousand dollars, telecommunications harassment is a felony of the fourth degree. If a violation of division (A)(4) of this section results in economic harm of one hundred fifty thousand dollars or more, telecommunications harassment is a felony of the third degree.

*     *     *

(G) As used in this section:

*     *     *

(2)     "Caller" means the person described in division (A) of this section who makes or causes to be made a telecommunication or who permits a telecommunication to be made from a telecommunications device under that person's control.

(3)     "Telecommunication" and "telecommunications device" have the same meanings as in section 2913.01 of the Revised Code.[1]

---

[1] R.C. 2913.01 provides the following definitions: " 'Telecommunication' means the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method." " 'Telecommunications device' means any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem."

(4)     "Sexual activity" has the same meaning as in section 2907.01 of the Revised Code.

(5)     "Family or household member" means any of the following:

(a)     Any of the following who is residing or has resided with the recipient of the telecommunication against whom the act prohibited in division (A)(9) of this section is committed:

(i)     A spouse, a person living as a spouse, or a former spouse of the recipient;

(ii) A parent, a foster parent, or a child of the recipient, or another person related by consanguinity or affinity to the recipient;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the recipient, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the recipient.

*       *       *

(6) "Person living as a spouse" means a person who is living or has lived with the recipient of the telecommunication against whom the act prohibited in division (A)(9) of this section is committed in a common law marital relationship, who otherwise is cohabiting with the recipient, or who otherwise has cohabited with the recipient within five years prior to the date of the alleged commission of the act in question.

(7) "Cable operator" has the same meaning as in section 1332.21 of the Revised Code.

*      *      *

**{¶27}** R.C. 2917.211 addresses the Nonconsensual Dissemination of Private Sexual Images of Another, and provides in pertinent part:

(A)     As used in this section:

(1)     "Disseminate" means to post, distribute, or publish on a computer device, computer network, web site, or other electronic device or medium of communication.

(2)     "Image" means a photograph, film, videotape, digital recording, or other depiction or portrayal of a person.

(3)     "Interactive computer service" has the meaning defined in the "Telecommunications Act of 1996," 47 U.S.C. 230, as amended.

(4)     "Internet provider" means a provider of internet service, including all of the following:

(a)  Broadband service, however defined or classified by the federal communications commission;

(b)  Information service or telecommunications service, both as defined in the "Telecommunications Act of 1996," 47 U.S.C. 153, as amended;

(c)  Internet protocol-enabled services, as defined in section 4927.01 of the Revised Code.

(5)     "Mobile service" and "telecommunications carrier" have the meanings defined in 47 U.S.C. 153, as amended.

(6)     "Cable service provider" has the same meaning as in section 1332.01 of the Revised Code.

(7)     "Direct-to-home satellite service" has the meaning defined in 47 U.S.C. 303, as amended.

(8)     "Video service provider" has the same meaning as in section 1332.21 of the Revised Code.

(9)     "Sexual act" means any of the following:

    (a)     Sexual activity;

    (b)     Masturbation;

    (c)     An act involving a bodily substance that is performed for the purpose of sexual arousal or gratification;

    (d)     Sado-masochistic abuse.

(B)     No person shall knowingly disseminate an image of another person if all of the following apply:

(1)     The person in the image is eighteen years of age or older.

(2)     The person in the image can be identified from the image itself or from information displayed in connection with the image and the offender supplied the identifying information.

(3)     The person in the image is in a state of nudity or is engaged in a sexual act.

(4)     The image is disseminated without consent from the person in the image.

(5)     The image is disseminated with intent to harm the person in the image.

*      *      *

(E) Any conduct that is a violation of this section and any other section of the Revised Code may be prosecuted under this section, the other section, or both sections.

(F)(1)(a) Except as otherwise provided in division (F)(1)(b), (c), or (d) of this section, whoever violates this section is guilty of nonconsensual dissemination of private sexual images, a misdemeanor of the third degree….

**{¶28}** The culpable mental state for both offenses is "knowingly", which is defined by R.C. 2901.22 as follows:

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶29}** The appellee presented at trial the testimony of the complaining witness, R.S., who identified the emails and the photographs that were attached thereto, and testified that he felt harassed by the obscene photos; and, the appellant's ex-girlfriend,

J.M., who was over the age of eighteen, who was depicted in the photographs nude and engaged in sexual activity, and who testified that she did not consent to dissemination of the photographs. The appellee also cross-examined the appellant, who conceded that the email address from which the photographs were sent was his email address, and conceded that he composed the messages. The trial court did not find his testimony that he "cancelled" the email messages to be credible.

{¶30} We find that, after viewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found that the essential elements of the crimes of Telecommunications Harassment and Nonconsensual Dissemination of Private Sexual Images of Another beyond a reasonable doubt. As such, we find that the appellant's guilty verdict on said charges is supported by sufficient evidence, and his second assignment of error is without merit.

### ASSIGNMENT OF ERROR NUMBER THREE

{¶31} The appellant argues in his third assignment of error that the trial court erred in imposing sentencing. We disagree.

### Standard Of Review

{¶32} "Generally, misdemeanor sentencing is within the sound discretion of the trial court and will not by disturbed upon review if the sentence is within the limits of the applicable statute. *State v. Schreiber*, 5th Dist. Licking No. 2022 CA 000098, 2023-Ohio-1864, ¶11, citing *State v. Thadur*, 5th Dist. Ashland No. 15 COA 018, 2016-Ohio-417, 59 N.E.3d 602, ¶11, internal citations omitted. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140

(1983). There is no requirement that a trial court, in sentencing on misdemeanor offenses, specifically state its reasons on the record. *State v. Harpster*, 5th Dist. Ashland No. 04COA061, 2005-Ohio-1046, ¶20.

**Analysis**

**{¶33}** R.C. § 2929.22 governs misdemeanor sentencing, and states in pertinent part:

> (B)(1) In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors:
>
> (a)      The nature and circumstances of the offense or offenses;
>
> (b)      Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;
>
> (c)      Whether the circumstances regarding the offender and the offense and offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;
>
> (d)      Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;

(e)    Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section.

*        *        *

(2) In determining the appropriate sentence for a misdemeanor, in addition to complying with division (B)(1) of this section, the court may consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code.

(C) Before imposing a jail term as a sentence for a misdemeanor, a court shall consider the appropriateness of imposing a community control sanction or a combination of community control sanctions under sections 2929.25, 2929.26, 2929.27, and 2929.28 of the Revised Code. A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future criminal offense.

{¶34}  R.C. § 2929.21 is referenced in R.C. § 2929.22(B)(2), and states in pertinent part:

(A)    A court that sentences an offender for a misdemeanor or minor misdemeanor violation of any provision of the Revised Code, or of any municipal ordinance that is substantially similar to a misdemeanor or minor misdemeanor violation of a provision of the Revised Code, shall be

guided by the overriding purposes of misdemeanor sentencing. The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public.

**{¶35}** There is nothing in the misdemeanor sentencing statutes that require the trial court to set forth its analysis regarding the purposes and principles of sentencing. Rather, we presume that the trial court considered the factors unless the record affirmatively shows that the court failed to consider the purposes of sentencing, or the sentence is strikingly inconsistent with the relevant considerations. *State v. James*, 7th Dist. Columbiana No. 07CO47, 2009-Ohio-4392, ¶50 (in a felony case), relying on *State v. Adams*, 37 Ohio St.3d 295, 525 N.E.2d 1361 (1988). In this case, however, the trial court discussed its reasoning behind the sentence it imposed.

**{¶36}** The appellant contends that the record does not support the imposition of his sentence. During sentencing the trial court noted that the victim, J.M.'s brother-in-law, was simply minding his own business in his own home, and "next thing he knows, he's got naked pictures of his sister-in-law." The trial court reviewed on the record the purposes behind the misdemeanor sentencing statutes, noting *inter alia* that "the overriding purposes of misdemeanor sentencing are to protect the public and future crime by the offender, and others, and to punish the offender." The sentence imposed upon the appellant – a total of 60 days in jail to be served in 10-day increments over a seven and

one-half month time period - is within the statutory parameters and achieves the overriding purposes of misdemeanor sentencing.

{¶37} Further, R.C. 2929.28 allows for the imposition of financial sanctions for misdemeanor offenses, stating in pertinent part that "[i]n addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a misdemeanor, including a minor misdemeanor, may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section." The fines imposed upon the appellant – totaling $50.00 to be paid over time – is also within the statutory parameters, and achieves the overriding purposes of misdemeanor sentencing.

{¶38} Upon review of the entire record, we find that the trial court did not abuse its discretion in sentencing the appellant. The sentence imposed was reasonable and within statutory parameters. The trial court's decision was neither arbitrary, unconscionable, nor unreasonable. Accordingly, the appellant's assignment of error number three is without merit.

### ASSIGNMENT OF ERROR NUMBER FOUR

{¶39} The appellant argues in his fourth assignment of error that the trial court engaged in judicial bias which undermined his right to a fair and impartial trial. We disagree.

{¶40} The appellant argues that the trial court exhibited judicial bias against him by actively encouraging R.S. to express negative opinions about the appellant, and by admonishing the appellant when he audibly responded during R.S.'s testimony, thus creating a double standard; that the trial court inappropriately excluded evidence of a well-

check on J.M. as irrelevant; and, that the trial court expressed undue concern for victim R.S. and not enough concern for victim J.M. He submits that the cumulative effect of these actions of judicial bias rise to the level of a violation of his "due process and fair trial rights."

{¶41} The issue of judicial bias was recently discussed by this Court in *State v. Baker*, 5th Dist. Muskingum No. CT2023-0019, 2024-Ohio-906:

> "The inquiry [for judicial bias] is an objective one. The court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " *Caperton v. A.T. Massey Coal Co., Inc.,* 556 U.S. 868, 881, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009). Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," but instead, "[a]lmost invariably are proper grounds for appeal, not recusal." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Likewise, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555, 114 S.Ct. 1147. *See, State v. Morrow,* 5th Dist. Muskingum No. CT2021-0053, 2022-Ohio-1089, ¶43.
>
> Judicial bias is demonstrated by "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney,

with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and [the] facts." *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, ¶ 33, 73 N.E.3d 414, *quoting State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

"A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, ¶ 5, 798 N.E.2d 23. Moreover, a party that seeks to establish bias bears the burden of overcoming that presumption. *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

*       *       *

Baker does not cite to any statement made by the trial judge during the sentencing hearing or the hearing on her petition for postconviction relief to demonstrate bias. Mere evidence of distain for the defendant is not enough,

The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of

the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (C.A. 2 1943).

*Liteky v. United States,* 510 U.S. at 550-551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

As we have found in our disposition of Baker's First Assignment of Error, the trial judge did listen to and consider Dr. Stinson's testimony. We do not find evidence in the record which would overcome the strong presumption that the trial judge was free of bias or prejudice against Baker or that establishes the trial judge's conduct denied Baker her right to due process.

*Id.* at ¶¶ 73-76. The *Baker* Court found that the appellant had failed to point to compelling evidence in the record that the trial judge was biased or "that there was an unconstitutional "potential for bias" that seriously affected the fairness, integrity, or public reputation of the sentencing hearing or the hearing on her petition for postconviction relief." *Id.* at ¶77.

**{¶42}** So, too, has the appellant herein failed to make such a showing. The record does not reflect that the trial court actively encouraged R.S. to express negative opinions about the appellant. While the trial court did admonish the appellant at one point during the proceedings when he audibly responded during R.S.'s testimony, a trial judge possesses the authority to exercise control over proceedings. Further, because the matter

was tried to the bench there is no concern that a jury might misconstrue the admonishment.

**{¶43}** In addition, it is well within the trial court's discretion to exclude evidence that finds to be irrelevant, and so long as the trial court does not abuse its discretion in this regard its decision will not be reversed. There was no abuse of discretion in this case, as the issues herein surrounded the harassing emails and obscene photographs that the appellant sent to R.S., and not the impact of a well check that may have been made which was unrelated to the emails and photos.

**{¶44}** Finally, the record simply does not reflect that the trial court showed "disproportionate concern for" R.S. and a lack of concern for J.M. such that judicial bias is established. Accordingly, the appellant's fourth assignment of error is without merit.

## CONCLUSION

{¶45}  Based upon the foregoing, we find the appellant's four assignments of error are without merit and are therefore overruled. The judgment of the Fairfield County Municipal Court is hereby affirmed.

By: Baldwin, J.

Gwin, P.J. and

King, J. concur.