[Cite as *State v. Stevens*, 2025-Ohio-5706.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2024CA00186 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2024CR0386 |
| WINFIELD STEVENS, | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry: December 22, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; David M. Gormley, Judges

**APPEARANCES:** KYLE L. STONE, Prosecuting Attorney, LISA A. NEMAN, Assistant Prosecuting Attorney, for Plaintiff-Appellee; D. COLEMAN BOND, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}   The appellant, Winfield Stevens, appeals his conviction and sentence for Rape and Gross Sexual Imposition in the Stark County Court of Common Pleas. The appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   On February 27, 2024, the Stark County Grand Jury indicted the appellant on one count of Rape in violation of R.C. 2907.02(A)(1)(b) and one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4).

{¶3}   On October 9, 2024, the matter proceeded to a jury trial.

{¶4} At trial, A.H. testified that the appellant is married to her sister. A.H. is the mother of the victim, K.S. K.S. was born on March 9, 2010. At the time of the incident, K.S. lived with the appellant on and off. After K.S. and A.H. moved out, A.H.'s children continued to visit the appellant and his wife during the summer of 2022.

{¶5} In late July of 2022, K.S. called A.H. upset, wanting to be picked up from the appellant's home. A.H. picked her up the next day. K.S. immediately showered upon returning home. After her shower, she complained of pain and bleeding from her vagina. K.S. had not yet started menstruating, so A.H. believed someone was touching her vagina. K.S. denied this, but A.H. thought she was lying. After A.H. asked again, K.S. told her she did not want to get anyone in trouble. K.S. then told A.H. that the appellant was touching her and having sex with her. K.S. has not returned to the appellant's house since her allegation.

{¶6} A.H. took K.S. to stat care to get a sexual assault kit and then to the emergency room. A referral was made to the Children's Network for K.S., who conducted a forensic interview and medical exam. K.S. continued going to Children's Network for psychology appointments. A.H. testified that K.S. had developed Urinary Tract Infections and was her nurse was afraid that she had contracted herpes around that time.

{¶7} Next, Alicia Farkas testified that she is employed at Stark County Children's Services ("the Agency"). In July of 2022, the Agency's hotline received a call concerning the sexual abuse of K.S. by her uncle. The caseworker assigned to the case passed away, but Ms. Farkas reviewed all of the caseworker's notes, which were kept within the ordinary course of business.

{¶8} Ms. Farkas testified that K.S. attended a forensic interview where she disclosed sexual abuse by her uncle. A referral was made for K.S. to complete a sexual abuse evaluation with a child psychologist and to undergo a sexual abuse evaluation. The investigation found the allegation of abuse to be substantiated based on the child's disclosure, medical diagnosis, and the belief that K.S. had a sexually transmitted disease ("STD"). However, additional testing showed that K.S. did not have an STD. She stated that had it been known that K.S. did not have an STD, they still would have found that K.S.'s sexual abuse was substantiated.

{¶9} K.S. stated in her forensic interview that she was there to get the appellant in trouble and put him in jail. The Agency never spoke with the appellant.

{¶10} Next, K.S. testified that she was fourteen years old. While she was staying at the appellant's house, she was watching TV or sleeping in her aunt's room when the appellant entered the room. K.S.'s aunt was at work at the time. The appellant approached her and touched her "private parts" without saying anything. K.S. testified that the appellant touched her with his hands on the outside of her body. K.S. was asked if the appellant's "private part" went into hers. K.S. responded that she did not want it to happen and did not let it happen because it hurt too much. K.S. said this happened more than once, but she did not see his private part. She said she did not remember if the appellant touched her inside her private part or just on the outside.

{¶11} Next, Detective Hostetler testified that in August of 2022, he was assigned to investigate this case. He watched the forensic interview with K.S. She identified her uncle as the man who sexually abused her, and it happened at his house in Massillon,

Ohio. DNA comparison testing of the appellant's DNA to the sexual abuse kit came back as inconclusive.

{¶12} Next, Carrie Schnirring testified that she is a co-owner and psychological assistant at Lighthouse Family Center. She testified that her work is dedicated to evaluating children. She testified that a sex abuse evaluation is to obtain as much information as possible about the trauma that the child experienced and to use that information to determine the diagnosis that best fits the symptoms.

{¶13} Ms. Schnirring testified that she considers several factors to become more confident about what has or has not occurred. First, she considers the consistency of the child's information. She also looks at idiosyncratic details of the event, contextual details about what was happening before and after the incident, the effect the incident had on the child, whether the child has an ulterior motive for what is being reported, patterns of grooming behavior, plausibility, and sensory mood details, which are about what the child remembers seeing, hearing, and feeling.

{¶14} Ms. Schnirring testified that she first met with A.H. In the interview, Ms. Schnirring discovered that K.S. told A.H. her vagina was hurting and bleeding. K.S. told A.H. she was touched by the appellant. K.S. has cognitive delays, has an IEP in school, and the mind of a much younger child. K.S. has been diagnosed with slight autism, seizure disorder, social anxiety, and a sleep disorder. Since K.S. disclosed what happened, she has been having behavior issues and cutting herself.

{¶15} Ms. Schnirring then met with K.S. Ms. Schnirring noted that K.S.'s cognitive level was below average, at the level of a seven- or eight-year-old. K.S. would become upset when discussing the appellant. When she talked about scared feelings, she would

mention the appellant, but no other family member. K.S. talked about the appellant putting his hand and mouth on her privates. K.S. also told Ms. Schnirring that the appellant put his private part in hers, and it hurt. The pain lasted until the next day.

{¶16} After her sessions with K.S., Ms. Schnirring reviewed the forensic interview. K.S.'s statements in both the interview and her sessions with Ms. Schnirring were consistent. Ms. Schnirring diagnosed K.S. with PTSD due to sexual abuse.

{¶17} Next, forensic scientist Brittani Troyer testified that she works for the BCI. Ms. Troyer testified that swabs from K.S.'s sexual assault kit were negative for foreign DNA. Her underwear was also negative for phosphatase activity and foreign DNA. Foreign DNA was found inside the back panel of K.S.'s underwear, but it was an insufficient amount for comparison purposes. Appellant provided a DNA sample approximately two years later.

{¶18} The final witness to testify was Alissa Edgein, a nurse practitioner. Nurse Edgein testified that she examined K.S. on August 1, 2022. K.S. reported vaginal symptoms, which included itching and burning. Nurse Edgein testified that K.S. reported that the appellant would touch her vaginal area with his hands to the point of causing pain. Nurse Edgein said it is extremely painful for the hymen of a child to be touched before the age of puberty.

{¶19} Nurse Edgein examined K.S. again about twenty days later due to reports of vaginal ulcers. Nurse Edgein was worried that K.S. had contracted herpes. She prescribed medicine. The ulcers cleared up within days, and her blood test came back negative for herpes.

{¶20} The appellee then rested its case.

**{¶21}** The appellant called D.S., his wife. D.S. testified that she is K.S.'s aunt. K.S. has lived on and off with the appellant and D.S. D.S. identified J.P. as A.H.'s boyfriend. J.P. and D.S. also have a son together. D.S. testified that K.S.'s allegations against the appellant arose just after she had signed paperwork to request child support from J.P. D.S. said J.P. would drink and drive with children in his car and was partying with younger-aged girls and children. D.S. does not believe the allegations and trusts that the appellant would not do this. D.S. has cervical cancer and has to be tested for STDs every six months. Based on this, she said she knew that the appellant did not have herpes.

**{¶22}** H.S., the appellant's daughter, testified that she moved out of her parents' home three months ago. Previously, she had lived with her parents her entire life. She has a close relationship with her cousin, K.S. K.S. never came to H.S. about the appellant or other boys in the house. H.S. believes that K.S. would have confided in her due to their closeness.

**{¶23}** Finally, the appellant testified that K.S. is his niece, but he has raised her as a daughter. The appellant testified that K.S.'s mother was never there for K.S. and bounced around from guy to guy. The appellant contacted Child Protective Services about J.P. because he had been driving around drunk with K.S. and K.S.'s brother just before these allegations were made against him. The appellant testified that after he was arrested, he took a herpes test, which was negative, to prove the allegations were not true. The appellant testified that any abuse K.S. experienced was not caused by him. He thinks A.H. and J.P. told K.S. to make the allegation because D.S. had requested child support from J.P.

**{¶24}** The appellant then rested his case.

**{¶25}** The jury found the appellant guilty of one count of Rape in violation of R.C. 2907.02(A)(1)(b) and one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4).

**{¶26}** The appellant was sentenced on October 23, 2024.

**{¶27}** The appellant filed a timely notice of appeal and herein raises the following five assignments of error:

**{¶28}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION OF RAPE AGAINST THE APPELLANT UNDER R.C. 2907.02(A)(1)(b)(B), AND THE CONVICTIONS MUST BE REVERSED."

**{¶29}** "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

**{¶30}** "III. THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."

**{¶31}** "IV. THE APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND RIGHT TO A FAIR TRIAL GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION WHEN MS. SCHNIRRING OFFERED EXPERT TESTIMONY THAT OPINED AS TO THE VERACITY OF K.S.'S STATEMENTS."

**{¶32}** "V. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

## I., II.

{¶33} In his first and second assignments of error, the appellant argues that his conviction for rape was based on insufficient evidence and against the manifest weight of the evidence. We disagree.

## STANDARD OF REVIEW

{¶34} The appellant challenges his conviction for rape on both manifest weight and sufficiency of the evidence grounds. Sufficiency of the evidence was addressed by the Supreme Court of Ohio in *State v. Worley*, 2021-Ohio-2207, ¶57:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs" R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

**{¶35}** Thus, a review of the constitutional sufficiency of the evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶36}** Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St. 3d 380 (1997). The Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra*, at 1594.

*Id.* at 387.

**{¶37}** The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the fact finder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court,

reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id*.

"* * *[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review Section 60, at 191-192 (1978).

## ANALYSIS

{¶38} R.C. 2907.02(A) states, in pertinent part:

(1)     No person shall engage in sexual conduct with another when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶39}** R.C. 2907.01(A) defines "Sexual Conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

**{¶40}** In the case sub judice, the record shows the victim was thirteen years of age or younger at the time of the incident. K.S. testified that the appellant touched her on her vagina. K.S. described sex as "a guy with a girl … doing it." She stated that the appellant did it with her, and it hurt. Furthermore, she testified that the appellant put his mouth on her vagina.

**{¶41}** Additionally, Nurse Edgein testified that the pain she was feeling from the appellant putting his "body part inside her vagina and moving," putting his "mouth on her vagina," and "stick[ing] his tongue in [her]" was consistent with a girl of K.S.'s age of any contact with the hymen.

**{¶42}** Based on the foregoing, and considering all the evidence in the record, and being mindful that "the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence," we find that the appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. *State v. King*, 2023-Ohio-875, ¶36 (12th Dist.).

**{¶43}** Accordingly, the appellant's first and second assignments of error are overruled.

## III.

{¶44} In his third assignment of error, the appellant argues that he was denied a fair trial due to prosecutorial misconduct. We disagree.

### STANDARD OF REVIEW

{¶45} The test for prosecutorial misconduct is whether the prosecutor's conduct was improper and, if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d (1986). Prosecutorial misconduct will not provide a basis for reversal unless it deprived the appellant of a fair trial based on the entire record. *Lott*, supra, 51 Ohio St.3d at 166 (1990).

### ANALYSIS

{¶46} The appellant argues that the prosecutor's remarks regarding DNA evidence were improper and constituted prosecutorial misconduct. We disagree.

{¶47} A prosecutor is given considerable latitude during closing arguments. *State v. Ballew*, 1996-Ohio-81. A prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *Lott* at 165. A prosecutor "must 'avoid insinuations and assertions which are calculated to mislead the jury[.]' " *State v. Steed*, 2016-Ohio-8088, ¶48 (6th Dist.), quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984).

{¶48} In the case sub judice, the appellant argues that the prosecutor submitted to the jury that he left behind DNA from saliva on her vagina. She further submits that it

was transferred to her underwear. Then, in the very next sentence, the prosecutor said, "[u]nfortunately it was an amount too minimal that we can't say who it belonged to."

**{¶49}** In reviewing the State's comments, we find they were not improper as the prosecutor correctly identifies that the DNA found in the victim's underpants was too minimal for any identification. Accordingly, we find the prosecutor's comments were not improper in the context of the evidence presented at trial.

**{¶50}** The appellant's third assignment of error is overruled.

## IV.

**{¶51}** In his fourth assignment of error, the appellant argues the trial court erred by allowing Ms. Schnirring to testify as to the veracity of K.S.'s statements. We disagree.

## STANDARD OF REVIEW

**{¶52}** The appellant did not object to Ms. Schnirring's testimony at trial. As such, we review this issue for plain error. Notice of plain error, pursuant to Crim.R. 52(B), "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978). An error affects substantial rights only if it changes the outcome of the trial. *State v. Spaulding*, 2016-Ohio-8126, ¶64.

## ANALYSIS

**{¶53}** An expert may not testify as to the veracity of a child declarant's statements. *State v. Boston*, 46 Ohio St.3d 108 (1989). There is a difference, however, "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." *State v. Stowers*, 1998-Ohio-632. "[A]n expert can testify that a child's

behavior is consistent with the behavior of other children who have been sexually assaulted." *Id*. Therefore, "Direct testimony that a child is truthful is always off limits. But testimony that merely provides background or context – without crossing the line into vouching – may be admissible." *State v. McCauley*, 2025-Ohio-3158, ¶58 (5th Dist.).

**{¶54}** Ms. Schnirring's testimony provided background to the jury without vouching for the victim's testimony as to whether or not the abuse occurred. Ms. Schnirring did not comment on the truthfulness of K.S.'s statements but rather provided context by discussing the factors that guide her level of confidence about what has or has not occurred. She evaluated K.S.'s statements in light of factors such as the child's emotions when discussing the abuse, the quality of the details, the patterns of the abuse, and K.S.'s level of sexual knowledge relative to her age. This illustrates how Ms. Schnirring's analysis remained within the permissible boundaries by focusing on behavioral patterns and the psychological impact on K.S., especially given K.S.'s intellectual disabilities. Her testimony, therefore, provided context without crossing into impermissible vouching.

**{¶55}** Accordingly, we find Ms. Schnirring's testimony not to be within the purview of *Boston*. Furthermore, we find the appellant has not established the outcome of the trial would have been different if Ms. Schnirring had not testified.

**{¶56}** The appellant's fourth assignment of error is overruled.

**V.**

**{¶57}** In his fifth assignment of error, the appellant was denied effective assistance of counsel for failing to object to Ms. Schnirring's testimony. We disagree.

**STANDARD OF REVIEW**

**{¶58}** The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was discussed by this court in *Mansfield v. Studer*, 2012-Ohio-4840 (5th Dist.):

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, [113 S.Ct. 838]; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶59}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

**{¶60}** To show deficient performance, the appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland* at 668. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial process. *Strickland* at 688.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*.

In light of the "variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. at 2064.

*Studer, supra*, at ¶¶58-61. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45 (1980).

**{¶61}** To demonstrate prejudicial ineffective assistance of counsel, the appellant must show a "reasonable probability that but for counsel's errors, the result of the trial would have been different." *Strickland* at 687-688. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶62}** Thus, in order to prevail on an ineffective assistance of counsel argument, the appellant must show both: 1) that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and, 2) that the appellant was prejudiced by such the alleged ineffectiveness.

## ANALYSIS

**{¶63}** The appellant argues that his trial counsel was ineffective for failing to object to Ms. Schnirring's testimony. The appellant summarily states that this testimony was highly prejudicial, but does not point to a specific basis on which prejudice can be established.

**{¶64}** The evidence presented at trial was substantial and included consistent statements from K.S., corroborating medical testimony, and other supporting evidence that strongly indicated the occurrence of the alleged abuse. Given the weight of this evidence, even if defense counsel had objected to Ms. Schnirring's testimony, it is unlikely that the objection would have led to a different outcome at trial. The testimony was consistent with other evidence presented by the victim and corroborating medical

testimony. Therefore, the appellant has failed to demonstrate the prejudice prong required to establish ineffective assistance of counsel.

{¶65} The appellant's fifth assignment of error is overruled.

## CONCLUSION

{¶66} Based upon the foregoing, the decision of the Court of Common Pleas of Stark County, Ohio, is hereby affirmed.

{¶67} Costs to the appellant.

By: Baldwin, P.J.

King, J. and

Gormley, J. concur.